Church *against* Riddle.

6 WS 509
30 SC 519

After the lapse of two years from the date of a treasurer's sale of unseated land, there is no title in the original owner which is the subject of a sheriff's sale, nor will such sale entitle the purchaser to recover the amount of the surplus bond given to the treasurer.

ERROR to the District Court of *Crawford* county.

Daniel Shryoch, treasurer of Crawford county, for the use of Gaylord Church against J. Stuart Riddle. The parties agreed to consider the following facts in the nature of a special verdict.

On the 6th May 1824, John Field, of Philadelphia, died intestate, leaving five heirs, (lineal decendants), of whom were Joseph and Samuel Field, and was seised of 200 acres of land in Crawford county, No. 44. On the 8th May 1824, letters of administration on said intestate estate were granted in Philadelphia county, to said Joseph Field. On the 11th August 1830, judgment was obtained by Joseph Clark, to the use of his assignees, in trust for the benefit of his creditors, against Joseph Field, administrator, &c. of said intestate, in the District Court for the city and county of Philadelphia, for the sum of $3151.96, and costs of suit, *de bonis et terris*, &c., and on the 12th August 1830, a *fi. fa.* issued on the same, and was returned *nulla bona*, after which, on the 16th May 1831, a *test. fi. fa.* was issued to Crawford county, and tested on the 12th March 1831, and on the 23d May 1831, was duly entered on the *testatum* docket of said county, and the same day the sheriff of said county, by virtue of said writ, levied (*inter alia*) upon said 200 acres of land, No. 44, and returned the writ. On the 3d August 1835, on motion, a rule was granted to show cause why the levy on the *testatum* to Crawford county should not be discontinued, and an *alias* issued, which rule was, on the 11th September 1835, made absolute. On the 16th September 1835, by the judgment of the District Court of Philadelphia, leave was granted to issue an *alias test. fi. fa.* to the same county, tested on the 7th June 1835, by virtue of which *alias* writ, the sheriff, on the 7th October 1835, levied on the same 200 acres, No. 44, which was by inquest on the 2d November following condemned, and the writ returned. The said *alias* was entered on the proper docket of Crawford county, on the 23d September 1835.

On the 10th June 1836, a *vend. exp.* was thereupon issued for the sale of said levy, tested the 7th March 1836. By virtue thereof the proper sheriff, on the 19th July 1836, sold No. 44 aforesaid, to Gaylord Church, and a deed of which was duly acknow-

[Church v. Riddle.]

ledged to him by said sheriff. On the 11th March 1832, said Joseph Field, by deed of that date, and said Samuel Field, on the 1st January 1835, by deed of the latter date, conveyed all their right and interest to said intestate estate in Pennsylvania, except in the city and county of Philadelphia, the said Joseph for the consideration of $500, and the said Samuel of $50, unto George Uhler, recorded in Crawford county, on the 17th January 1835, the said Joseph and Samuel being two of the heirs of the said John Field, deceased, as aforesaid. On the 11th June 1834, at the treasurer's sales of unseated lands in Crawford county, the defendant, J. Stuart Riddle, purchased the said 200 acres of land, No. 44, for the taxes of 1832 and 1833, and gave his bond for the surplus money, on which this suit is instituted, to Daniel Shryoch, the then treasurer of Crawford county, conditioned for the payment of $204.27, being the amount of said surplus money, and received a deed for said land from said treasurer. On the 12th Nov. 1836, said Gaylord Church demanded payment of said land from said defendant, in his own right as purchaser at sheriff's sale aforesaid, of the said 200 acres of land No. 44.

Now if upon the foregoing case stated, the court should be of opinion that the plaintiff is entitled to recover the whole amount of said land for the use of said Gaylord Church, then judgment to be entered for plaintiff, &c., for the sum of $204.27$\frac{1}{2}$, with interest from the time of demand, made as aforesaid, and costs of suit; but if the court should be of opinion that said Church is only entitled to recover the four-fifths part of said land, or the three-fifths part thereof, then judgment to be entered for his use for the said four or said three-fifths part thereof respectively as aforesaid, with interest as aforesaid, and costs of suit, and as for the other one or two-fifths, such judgment to be entered as to the court may seem legal. But if the court should be of opinion that the plaintiff is not entitled to recover in this case, then judgment to be entered for defendant.

THOMPSON, President, was of opinion that the plaintiff was not entitled to recover, and directed a judgment to be entered for the defendant.

*Farrelly* and *Pearson*, for the plaintiff in error, cited 1 *Dall.* 481; 1 *Yeates* 238; 8 *Watts* 124; 2 *P. R.* 95; 2 *Watts* 53; 7 *Watts* 217; 9 *Watts* 558; 1 *Watts* 301; 3 *Caines* 188; 3 *Johns.* 222; 1 *Rawle* 363; 12 *Serg. & Rawle* 12; 2 *Dall.* 205; 6 *Serg. & Rawle* 81; 3 *Binn.* 4.

*Derrickson*, contra, cited 4 *Watts* 341; 8 *Watts* 253; 2 *Rawle* 292; 7 *Watts* 336; 4 *Watts* 13; 1 *Rawle* 325; 10 *Watts* 405-7; 6 *Watts* 22; 5 *Watts* 287.

[Church v. Riddle.]

The opinion of the court was delivered by

HUSTON, J.—In this case stated, two or three points were made by the counsel of the plaintiff here, though perhaps it is not necessary to consider them all in deciding this cause. John Field died on the 6th May 1824, and on the 8th May 1824, administration was granted to his son Joseph. On the 11th August 1830, a judgment was entered *de terris* (I suppose meaning to exclude all personal liability of the administrator) in favour of Joseph Clara, for $3151.96. On the 12th August 1830, a *fi. fa.*, returned " *nulla bona.*" On the 16th May 1831, a *testatum fi. fa.* issued to Crawford county, and 23d May 1831, was duly entered on the docket of that county, and by the sheriff levied on a tract No. 44, containing 200 acres, and the sheriff returned the writ. On the 3d August 1835, on motion, leave was given to discontinue the levy on the writ on the land in Crawford county. On this part of the case something was said that the writ was not set aside. Now when the return day of a writ has passed four years, and the levy is set aside, the writ can never be levied again; it is dead, and there is no more use or effect in setting it aside than there would be if it had never been delivered to the sheriff. On the 16th Sept. 1835, by the judgment of the District Court of Philadelphia, leave was given to take out an *alias test. fi. fa.* to Crawford county, which issued tested 7th June 1835, by virtue of which the sheriff, on 7th Oct. 1835, levied (*inter alia*) on the same 200 acres No. 44, which by inquisition on 2d Nov. 1835, was condemned. This last *fi. fa.* was entered on the docket of Crawford county, 23d Sept. 1835. On the 10th of June 1836, a *vend. ex.* was issued for the sale of said levy, tested 7th March 1836, and by virtue of it the land was, on 19th of July, sold to Gaylord Church, and a deed made to him (date not given). All this, and the fact that Joseph Field sold his interest in the land to Dr Uhler, on the 11th March 1832, and that Samuel Field sold to the same, 1st January 1835, was stated to raise some question as to whether the lien of Clark against the lands and estate of John Field, had, as against the heirs of Field, expired, and cases were cited as to when this lien as against those heirs expired; whether at the end of twelve years from the death of John Field, or at the end of five years from the date of Clark's judgment on the 11th of August 1830. This seems immaterial, because twelve years from the death, and five from the date of the judgment, had expired before the sale; and because the estate of John Field's heirs was divested by a sale for taxes more than two years before the sale of this tract on the *vend. exp.* and one year and upwards before the *fi. fa.* was levied on the tract in question.

On the 11th June 1834, this tract of John Field, or his heirs, No. 44, containing 200 acres, was sold for taxes due and unpaid for the years 1832 and 1833, by the treasurer of Crawford county, to J. Stuart Riddle, and a deed executed, acknowledged and de-

livered, and bond duly given and filed for $204.27, being the amount which the sum bid exceeded the taxes and costs due on the tracts. An attempt was made to put this case on the same rights as if Riddle held the land by article of agreement under John Field, and part of the purchase money still due. The Acts of Assembly forbid us so to consider it. By the 5th section of the Act of 3d April 1804, sales for taxes " shall be in law and equity valid and effectual to all intents and purposes, to vest in the purchaser of lands sold as aforesaid, all the estate and interest therein that the real owner had at the time of such sale ;" and by the 4th section of the Act of 18th March 1815, the owner may, within two years from such sale, tender to the county treasurer the taxes and costs for which the land sold, with 25 per cent. on the same, which the treasurer must pay over to the owner. But if such tender to the treasurer is not made, or if the owner has not paid the taxes before the sale, no action shall be supported by the owner for the recovery of the land. It then proceeds to dispense with proof of advertisement and notices, and repeals the law requiring such proof, and no alleged irregularity in the assessment, or in the process or otherwise, shall be construed or taken to affect the title of the purchaser, but the same shall be declared to be good and legal, with a saving for persons under certain disabilities. This case is then more like to that in which a man has sold in fee simple, and has obligations for part of the consideration money unpaid, in which case the purchaser of the fee simple holds the land freed from the unpaid purchase money.

It has been contended that a right of redemption remained in the representatives of John Field, which could be levied on and sold and conveyed to the purchaser. Without disputing this, it is clear that the right sold could be no greater than that which was levied. Now, an estate for years or for life may be levied on; but if the term for years is suffered to expire, or the tenant for life dies before the sale, there remains no estate to be sold; and if a sale, the purchaser takes nothing. The two years had expired before this sale ; if sold within the two years, the purchaser would have acquired whatever right remained in the representatives of Field. After the two years had expired, no right in or to the land remained which could be sold on that process, and of course no such right passed to the purchaser. By an Act of Assembly bonds or debts due to the defendant in an execution may, by an attachment clause in an execution, be taken for the plaintiff; but this law must be complied with ; a debt due on bond cannot be levied on and sold on an execution against land.

The fallacy of the ground taken by the plaintiff, among other things, consisted in supposing this interest remaining in Field to be a fee simple, when the fee was in Riddle, and Field's representative had no right except on the precedent condition of tendering money within two years of the sale for taxes ; and those two years

[Church v. Riddle.]

having elapsed, no Act was required to make the title of Riddle indefeasible. Lapse of time and the operation of the law extinguished the right of the former owner. The purchaser of land at a sheriff's sale, if he purchases a good title, holds the land though it turns out to be worth ten or fifty times the price for which it was sold. On the other hand, if he buy a defective title, totally worthless, he loses his money ; and it was never before supposed that he could indemnify himself by seizing or claiming other lands or goods, or debts still left to the defendant. Shryoch, the treasurer, can sue only for the heirs or legal representatives of John Field, and Church is neither of these.

Judgment affirmed.